Ruth Anne L. Phillips
P.O. Box 97, Mammoth Spring, AR 72554
434-942-4056

# IN THE UNITED STATES DISCTRICT COURT FOR THE WESTERN DISTRICT OF VIRGINIA

## Lynchburg Division

CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

**OCT 1 8 2016**

JULIA C. DUDLEY, CLERK
BY: _Paul Coleman_
DEPUTY CLERK

**Ruth Anne L. Phillips**
P.O. Box 97
Mammoth Spring, AR 72554

6:16 CV00063

       Plaintiff v

**Lynchburg Fire Department**
800 Madison Street
Lynchburg, VA 24504

and

**City of Lynchburg**
900 Church Street
Lynchburg VA 24504

## EMPLOYMENT DISCRIMINATION, HARRASSMENT AND RETALIATION COMPLAINT AND DEMAND FOR A JURY TRIAL

## Introduction

1. Plaintiff Ruth Anne L. Phillips, brings this action to redress unlawful employment discrimination based on age and gender, sexual harassment, assault, and retaliation perpetrated against her by the Lynchburg Fire Department and the City of Lynchburg. Plaintiff was subjected to a hostile work environment and reporting the behavior to supervisors was often dismissed, ignored or resulted in retaliation against the Plaintiff. Supervisors and management often participated in and condoned the harassment and retaliation against the Plaintiff.

Signed & Dated by Ruth Anne L. Phillips, Pro Se _RAZPhill_ 10-17-2016

Plaintiff suffered emotional and financial distress as a result of the Defendant's actions. Plaintiff continues to suffer as a result of the Defendants' actions.

## Jurisdiction

2. This Court has jurisdiction over the claims raised herein, pursuant to Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act.

3. Venue is determined based on the location of Lynchburg, Virginia where the acts of the Complaint took place and where Plaintiff lived and was employed by the Defendant. Lynchburg is in the jurisdiction of the United States District Court for the Western District of Virginia

4. Plaintiff sufficiently exhausted all available administrative remedies on her claims as the EEOC issued a dismissal and notice of right to file a civil action concerning these claims fewer than 90 days of the filing of this action. The Right to File Notice is attached. Attempts to reach an agreement through mediation were disregarded by the City of Lynchburg and the Lynchburg Fire Department.

## Allegations

5. Plaintiff is a 52 year old white female and was 48 years old at the time of employment by the Defendant. As such, Plaintiff is in a protected class.

6. Plaintiff worked for the Defendant as a firefighter/EMTB from approximately early March 2013 through late July 2015.

7. On or around March 5, 2013 Plaintiff was required to have a physical as a requirement of employment by the Defendant. She was told to report to the Johnson Health Center in Lynchburg, VA where Plaintiff was examined by RN Sam Ripley. RN Sam Ripley subjected Plaintiff to a hostile and discriminatory line of questioning and comments in regards to her age and gender. He advised Plaintiff that she should consider

another job and that being a firefighter was hard work and questioned
her overall strength to facilitate the job. RN Sam Ripley advised that his
two sons were firefighters and that the job wasn't handed to them like it
had been to the Plaintiff. He requested that Plaintiff provide him with
the date of her last menses and followed up with, "or if you still have
one," and laughed at Plaintiff. He stated that women did not have the
upper arm strength to be firefighters and grilled her on how many push-
ups she was able to complete. He further stated that the Plaintiff's lack
of bone mass would impede her abilities and suggested, without
evidence, that she had osteoporosis. RN Ripley stated that older women
don't have the "lung capacity" to do the job. Plaintiff reported the
incident to her hiring supervisor, Battalion Chief Robert Lipscomb and he
responded by saying, "Welcome to the fire department!" and not to
worry about "Sam" because he was simply being "protective of his
boys."

8. During the Lynchburg Fire Department Academy from March 2013
through May 2013, the cadets were provided with company equipment
in the form of iPads. Plaintiff was moved to the back of the classroom
where she was subjected to sexual imagery of women and pornography
from employees using their iPads during lectures. When Defendant
reported the issue to Battalion Chief Lipscomb, he told Plaintiff that the
iPads were available for personal use and the department was not
responsible for monitoring their content.

9. During the Lynchburg Fire Department Academy from March 2013
through May 2013, the Academy facilities provided one unisex
bathroom for use as a toilet and changing area. The male employees
regularly changed in the classroom, but no separate facilities were
provided for the female employees. Plaintiff was penalized for being late
on at least two occasions due to her inability to access the bathroom.
When Plaintiff changed in the open space of the classroom, she was
ridiculed and maligned by her coworkers.

Signed & Dated by Ruth Anne L. Phillips, Pro Se _____ 10-17-2016

10. During the Lynchburg Fire Department Academy from March 2013 through May 2013, cadets were told not to fraternize with employees that were not cadets. The cadets were advised that the policy was written to prevent any accusations of bias or special treatment and those who did not comply would be subject to dismissal. The policy was not applied equally, and certain members of the class were allowed to attend concerts, go boating and join in other social gatherings with their superiors. This provided professional advantages and special treatment to those who were allowed to attend the events. The Plaintiff was not included in the events and as a result her career suffered. Master Firefighter Christopher Milner, Master Firefighter Matthew Smith, Captain John Ripley, and Captain Allen Carwile were aware of and/or participated in the outside activities. Battalion Chief Robert Lipscomb was aware of the breach and failed to enforce the policy and allowed the activities to continue for the selected individuals. Plaintiff reported the policy infraction to Battalion Chief Ninette Heath and she advised Plaintiff that she wasn't surprised, but if Plaintiff pursued the matter further, she would likely be retaliated against or fired.

11. During the Lynchburg Fire Department Academy from March 2013 through May 2013, the Defendant created a hostile work environment by promoting racism, bigotry, sexual harassment and hate speech. These activities were done in the presence of supervisors and were often performed by supervisors. Attempts to combat these acts by the Plaintiff in the form of verbal complaints to Captain Allen Carwile and Battalion Chief Robert Lipscomb were dismissed or met with retaliation by her superiors and coworkers.

12. The Defendant has a history of racially harassing members of the African American community dating back to at least August 30, 2012 when Battalion Chief Jason Campbell posted a photo of two African American women from the community on his Facebook page with a derogatory comment. The African American Firefighter who reported the incident

was subjected to retaliation and Jason Campbell was promoted to
Deputy Chief where he remained as Plaintiff's superior officer.

13. During the Lynchburg Fire Department Academy from March 2013
through May 2013, the Plaintiff witnessed an African American
firefighter recruit {Colby Felton} being called "Cleetus" and being hit in
the back of the head by other recruits as they ran by. When Plaintiff
brought this and other acts of harassment and racism to the attention of
Battalion Chief Robert Lipscomb, he told Defendant that she needed to
"stop mothering everyone" and that recruit Colby Felton needed to
"toughen up."

14. During the Lynchburg Fire Department Academy from March 2013
through May 2013, while the class was running stairs at Monument
Terrace in Lynchburg, firefighter recruit Brian Stinette instigated the
racial harassment of an African American male who was walking down
the street and yelled at him to pull up his pants. Recruits Joshua
Granger, Jeff DeGoode, and Adam Wagner also harassed the youth,
calling out that he must want "to be fucked up the ass" because he wore
his pants like that. They further suggested that the youth had been in
prison, or he wouldn't be wearing that manner of dress. This was done
in the presence of Master Firefighter Christopher Milner who did not
stop the harassment. Master Firefighter Christopher Milner has since
been promoted to Captain and firefighter recruit Brian Stinette was
given a leadership award at the conclusion of the Academy.

15. During the Lynchburg Fire Department Academy in May 2013, Captain
Allen Carwile said he was going to give the class a break by allowing
them to watch a YouTube video called "Funny Arab Shooting Gun." The
video had no moral or educational value. During the video, Recruit Trey
Martin was encouraged by Captain Allen Carwile to provide a running
commentary in a stereotypical, offensive and cartoonish accent which
referenced terrorists, Muslims and Bin Laden. Afterwards the same

Signed & Dated by Ruth Anne L. Phillips, Pro Se _____ *RAHPhell* 10-17-2016

cadet asked if the class would be able to watch the one with "girls shooting guns."

16. During the Lynchburg Fire Department Academy from March 2013 through May 2013, Recruit Joshua Granger frequently came to work smelling of alcohol and would sleep during class. This same person was allowed to show up late and/or miss class on numerous occasions. The individual was assigned to the same squad as the Plaintiff and he was verbally abusive to her. He referred to her, his wife and other women as bitches and whores. In addition to the open hostility and harassment exhibited by the individual, Plaintiff had safety concerns about working with an impaired team member. When the Plaintiff reported the individual to Captain Allen Carwile, the Captain screamed at the Plaintiff with enough force that spittle landed on her face and on her person. He told her that the cadet was more qualified than anyone in the department and should be teaching the class. Plaintiff brought the issue up with Battalion Chief Robert Lipscomb who said that the cadet was going through a difficult time and should be "given a break."

17. During the Lynchburg Fire Department Academy from March 2013 through May 2013, supervisors and cadets frequently used the term bitch, ho and whore to describe women. When Plaintiff advised her coworkers that the name calling was unacceptable, she was retaliated against and ostracized.

18. During the Lynchburg Fire Department Academy in May 2013, Plaintiff was assigned to work with Brian Stinette and Josh Granger who verbally harassed her and used crude, sexist and racist language. Brian Stinette referred to elderly workers at the Home Depot as "old, senile fuckers" who should be fired because they were deaf and couldn't do their jobs. Plaintiff was told they were "her people" and maybe she could get a job there when she "washed out of the Academy." Plaintiff did not report the behavior to Captain Allen Carwile because of his open hostility toward her and his previous defense of these same recruits. When

Signed & Dated by Ruth Anne L. Phillips, Pro Se _____ *RHZDhllr* 10-17-2016

Plaintiff described the behavior to Battalion Chief Ninette Heath, she advised that Plaintiff would be hearing a lot of that kind of talk. When the Plaintiff reported the behavior to Battalion Chief Robert Lipscomb, he advised Plaintiff that she needed to figure out how to get along with others and maybe find a liberal support group. He told her she needed to tone down her beliefs and they were upsetting people.

19. During the month of June, 2013, Plaintiff was assigned to Station 4 to begin her duties as a Firefighter/EMT. During her assignment, transmission fluid was put under her car and her equipment was moved without permission. When Plaintiff reported the incidences to Captain Darrell Hamlett, he stated that the actions were pranks and she was lucky her treatment wasn't worse.

20. From June 2013 to July 2015, Plaintiff was subjected to negative comments in regards to women and minorities which created a hostile work environment. On Plaintiff's first day of her assignment at Station 4, Plaintiff was told by firefighter Steven Mattingly, "I hear you like black guys" and "too bad about your boyfriend." (He was referring to one of the African American cadets who did not complete the Academy.) The firefighter further stated, "I heard his dick was so big, that he had to wear longer shorts." He further suggested that Plaintiff would be able to verify the size of the male's penis, since she had personal experience with it. Plaintiff is married and did not have an extramarital affair.

21. From June 2013 to July 2015, Plaintiff was subjected to negative comments in regards to women and minorities which created a hostile work environment. This included comments where Battalion Chief Heather Childress was referred to as a fat ass, a fat dyke, and a lesbian by Captain Darrell Hamlett. He also referred to Medical Director Marilyn McCloud as a dyke and incompetent. Captain Hamlett called Captain Jennifer Collins an idiot and stupid and said the only reason she had been promoted was because they needed to promote a female. At Station 4 and in the presence of Plaintiff, firefighter Candace Brown was

called a "Stupid Bitch" by firefighter Robert Tucker. At that same station, firefighter Steven Mattingly stated that the only reason firefighter Michelle Drake was hired was that she gives "blow jobs" to Chief Brad Ferguson.

22. From June 2013 to July 2015, Plaintiff was subjected to negative comments in regards to women and minorities which created a hostile work environment. The comments continued throughout the Plaintiff's tenure at the department. Plaintiff was retaliated against and/or ostracized when she stood up for herself, for others, and when she reported the malfeasance to superiors.

23. On July 20, 2013, the Plaintiff was told by firefighter John Simms that she was too old to be hired as a firefighter and that black people, women and women "like her" had caused him delays in getting hired because there were "quotas" that needed to be filled.

24. During the month of July, 2013 Captain Darrell Hamlet walked into the kitchen where President Obama was on the television and in front of Plaintiff called President Obama "...that Nigger." Plaintiff sought guidance from Master Firefighter Quincy Scott of the Lynchburg Progressive Firefighters Association who advised her that it was up to her if she wanted to pursue the matter further, but warned that the Defendant had a history of retaliation against those who complained about racism in the department. Plaintiff was on probation and was fearful that reporting the incident up the chain of command would cause her to lose her job.

25. On September 19, 2013 while driving with firefighter Andrew White to training, firefighter Trey Stillman openly ridiculed an African American Patient who had called 911 to report a rape. He commented on Patient's manner of speech and dress and bragged about telling the Patient, "Uh, that's not rape. You can't be raped by your 'Baby Daddy.'" This same firefighter was in the Emergency room ridiculing African Americans and

Signed & Dated by Ruth Anne L. Phillips, Pro Se _____ 10-17-2016

their names with firefighter Mary Schumate who stated that her old partner used to ridicule {African Americans} to their face and it was "hilarious."

26. On September 20, 2013 the Plaintiff was physically assaulted during Mayday training by an employee of the Lynchburg Fire Department. She was completing an exercise in the darkened burn building and was pushed with enough force that she fell backward onto the floor and hit her head on the concrete wall. The incident was reported to Captain Darrell Hamlett, Battalion Chief Robert Lipscomb and Battalion Chief Ninette Heath. Plaintiff was advised that there was nothing that could be done, because they didn't know who did it. Captain Darrell Hamlett urged Plaintiff to get past what had happened to her at the Academy and to move on. Plaintiff discovered that the incident was not isolated and that firefighter Michelle Drake had previously reported an assault during training.

27. On October 3, 2013 firefighter Rudy Pierre was looking for someone to work his shift and Plaintiff agreed to cover it for him. Firefighter Rudy Pierre said that he had spoken to Captain Ken Turner and was told that Plaintiff was not allowed to work at Station 3 or trade shifts to work there. He told her that Captain Ken Turner told him that Plaintiff would "never" work there. Plaintiff advised Battalion Chief Robert Lipscomb who told Plaintiff that it was up to the Captains to decide who worked at their stations and there was nothing he could do about it. When Plaintiff asked the Battalion Chief if any Captain had ever singled anyone out for this type of banishment, he stated, "Not that I'm aware of."

28. During Plaintiff's assignment at Station 4 in 2013 and 2014, firefighter Patrick Madigan was assigned as Plaintiff's partner. During her time working with him, Plaintiff maligned and berated Plaintiff about her gender, age and beliefs. He berated her as a working mother and grandmother and for living off of Rivermont in Lynchburg. He told her she was irresponsible for raising her children there. When Plaintiff asked

what he meant by that, he said, "Just look around you." Firefighter Patrick Madigan frequently refused to provide Plaintiff with directions while she was driving which caused her extreme stress. The behavior continued over the course of months while the Plaintiff attempted to get along with the individual. Plaintiff rebuked her for not being a Christian and when she volunteered at other organizations, he told her "you can't buy your way into Heaven." Their relationship deteriorated to the degree that firefighter Patrick Madigan removed his pants and deliberately exposed his penis to the Plaintiff in the locker room. The behavior was reported to Captain Darrell Hamlet and the individual was transferred to Station 1.

29. On or around May 2014, Plaintiff received her Public Professional Certificate from the City of Lynchburg. During the harassment and discrimination training, Plaintiff was grouped with Captain John Norman who asked Plaintiff if she was a lesbian.

30. On August 14, 2014 firefighter William Heywood and firefighter Chris Hiner bragged about "fucking" and "screwing" women and referred to women in pejorative terms while Plaintiff was working in the kitchen. Plaintiff reported the incident to Captain Darryl Hamlett, who dismissed the behavior as immature.

31. During his temporary assignment at Station 4, Captain Tom Bartell called Plaintiff into the office and told her he wanted to get to know her. During their conversation, he told Plaintiff that his wife was a tattoo model and showed Plaintiff a photo of a nude woman with her hand positioned over her vagina as though she were masturbating.

32. On February 24, 2015 firefighter Brandon Brown posted on Plaintiff's Facebook page a comment that said "women are not qualified" to work in the fire service.

33. Captain Darrell Hamlett referred to the LBGTQ community as a bunch of "fucking faggots," "fags" and "queers" in regards to the Equality in Marriage Act. He said that if he saw two "faggots" kissing at a restaurant he would be forced to get up and leave. He said that he was sorry if it was insulting to Plaintiff, but he was a Christian and had certain beliefs.

34. On March 3, 2015, while Plaintiff was a Paramedic student at Station 3, she was asked by firefighter Stuart Barney, who she thought she was - that she could do "this job at your age." He asked her what she was trying to prove. He questioned her arm strength and said "older people can't get up in the night" and it was ridiculous for her to pursue a firefighting career. He said "even I have a difficult time doing the job." He said that Plaintiff should be home taking care of her family and asked if she was a Christian with "Christian family values," and if she didn't, "what is wrong with you?"

35. On March 3, 2015 while Plaintiff was completing her medical rotation at Station 3 Captain Ken Turner stated that the African Americans protesting in Ferguson Missouri were "criminals" and "animals" and they should all be in jail. He referred to the corner market as "Ahkmed's" and the owner as a "raghead." The Plaintiff canceled her next scheduled ride-a-long at the station and reported the behavior to Captain Darrell Hamlett.

36. Acting Captain Steve Ripley, firefighter Chad Reeves and firefighter Mary Schumate from Station 1 arrived at Station 4 to fill in while the regular crew was at training. Acting Captain Steve Ripley advised Plaintiff that they would not be eating or training with her. Acting Captain Steve Ripley and firefighter Chad Reeves refused to speak to Plaintiff the entire shift. This was reported to Captain Darrell Hamlett who said he would handle it.

37. While working at Station 4, Dakota Banks stated that firefighter Michelle Drake hadn't been fired yet, because she was still giving Chief Ferguson

"blow jobs." He further disparaged Plaintiffs place of residence and referred to it as the "ghetto." When Plaintiff told him that she was insulted because that was her community and Michelle was a coworker and friend, he replied, "That's your problem."

38. On May 19, 2015 firefighter Charles Schrader referred to former firefighter Rudy Pierre as "the Muslim Rudy" and bragged about telling him that at the LFD they were "Christians who did things the Christian way."

39. On May 19, 2015 at EVOC/Pump training, firefighter Jeffrey DeGoode showed a picture of retired female Battalion Chief Ninette Heath which she had posted on her Facebook page. In the photo she was holding a fish that she'd caught on a fishing trip. Firefighter Jeffrey DeGoode said, "Look at Ninette showing off her tits on Facebook!" Captain Tom McCriccard asked to see the picture and said, "Wow, is that our Ninny?" The phone was passed around the group to firefighters Adam Wagner, Steven Mattingly, Tim Greenway, Chad Hogan, Andrew White, Charles Schrader, Chris Hiner, Tucker Driscoll, and Battalion Chief Greg Wormser. Plaintiff was the only female present. Firefighter Jeffrey DeGoode and firefighter Steve Mattingly made additional lewd comments about firefighter Candace Brown's breasts and described them as "disgusting." Firefighter Steve Mattingly stated that after someone had seen her pumping {breast milk} at the station, they were traumatized to the degree that the individual had vomited and required therapy.

40. On May 19, 2015 Plaintiff reported the EVOC/Pump training incident to Captain Darrell Hamlett. He told her that she could take the matter further, but she would likely be retaliated against. He stated that she was already not well liked, and by reporting it, she would be subjected to further harassment and retaliation. Captain Darrell Hamlett recommended that Plaintiff wait until after the class to have the meeting and suggested that Captain Tom McCriccard was capable of

"making sure she failed" and had friends in "high places" within the department. Captain Darrell Hamlett called a meeting between Plaintiff and Battalion Chief Robert Lipscomb and was told that Captain McCriccard would be on vacation and Plaintiff could meet with him when he returned. Plaintiff declined the meeting because she did not believe that her supervisors had the ability to protect her from further discrimination, harassment or retaliation and because Battalion Greg Wormser was in the promotional process to become Deputy Chief.

41. On May 21, 2015 during lecture at pump class Captain Tom McCriccard referred to the lack of testing standards in the fire service as the "pussification of the fire service."

42. In June of 2015 while Firefighter Neil Patterson from Station 1 was working at Station 4, he asked Plaintiff why people in the department "hated" her so much. This was reiterated by Master Firefighter Darryl Dubois who told Plaintiff that when he was working at Station 1, they had asked him how he could "stand working" with Plaintiff and that they "hated" her.

43. On July 7, 2015 Plaintiff was required by the Defendant to complete a protocol assessment in front of the EMS Director Marilyn McCloud in order to practice as an EMTI for the Defendant. After Plaintiff finished her assessment, Plaintiff returned to the conference room and was told by firefighter Travis Calloway and firefighter Tyler Harrison that they were glad they had been told what they would be tested on by Captain James Mitchell prior to the exam. Both of them passed the assessment. The Plaintiff subsequently failed and was told by Battalion Chief Robert Lipscomb and Battalion Chief Heather Childress that she would be transferred to Station 1 so she would receive "more experience." Shortly thereafter, Plaintiff emailed a letter of resignation to Captain Darrell Hamlett.

Signed & Dated by Ruth Anne L. Phillips, Pro Se *RAZ Phllln* 10-17-2016

44. On July 9, 2015 Plaintiff reported the cheating to Captain Darrell Hamlett, who said he didn't doubt it, but there was nothing he could do. At that time, they discussed Plaintiff's resignation. She told him that she couldn't be transferred to Station 1, where she would be assigned to work with her abusers. She told him that she willing to go to Station 6 – as they had discussed previously - but that working at Station 1 was not acceptable as she feared for her safety if she was stationed there. Captain Darrell Hamlett agreed it was not an "ideal situation" and understood where she was coming from. He said that Plaintiff was a "grown ass woman" who could make her own decisions and accepted her resignation.

45. On July 9, 2015 Plaintiff spoke with Battalion Chief Robert Lipscomb about the poor treatment of women and minorities at the fire department. She specifically identified firefighter Michelle Drake, who had been subjected to years of harassment. He told Plaintiff that the employee had brought it on herself. When Plaintiff asked him how she had caused people to say she was giving blow jobs to the chief, he said "yeah, that wasn't right." Plaintiff told Battalion Chief Lipscomb that she was afraid of being transferred to Station 1 because of the potential for additional harassment. Battalion Chief Lipscomb advised Plaintiff that he wouldn't let anything happen to her. Plaintiff said she didn't trust the Department to do the right thing and was worried about her safety in a fire ground situation. Battalion Chief Robert Lipscomb stated that he understood her concerns and accepted her resignation.

46. On July 11, 2015, Plaintiff spoke with Battalion Chief Michael Thomas about the poor treatment of women and minorities at the fire department. She specifically brought up firefighter Michelle Drake and firefighter Candace Brown. He stated that those women had brought the harassment upon themselves. When Plaintiff asked how they had done that, Battalion Chief Michael Thomas specifically said one of them had an affair with a married man and stated that she shouldn't have had "a child out of wedlock." In regards to the other, he said, "well, just look

Signed & Dated by Ruth Anne L. Phillips, Pro Se _RAYOhllm_ 10-17-2016

at her." When Plaintiff asked what she {herself} had done to deserve the treatment, he said she was guilty of "rocking the boat."

47. On July 13, 2015 {retired} Battalion Chief Ninette Heath posted on her Facebook page a story about the harassment she had been subjected to by the Defendant throughout her years at the Lynchburg Fire Department. In response, firefighter Jaime Maxwell posted "1 Corinthians 14 34 – 35 {Women Should Remain Silent}" and referenced "the homosexual onslaught" and the "battle flag of the Confederate Army." This was done in a written conversation that included Captain John Norman.

48. On July 14, 2015 Plaintiff filed a Charge of Discrimination with the EEOC. The charge was amended on July 19, 2016 to include an additional charge of Retaliation after it was confirmed by an independent reference check that Defendant has been disparaging Plaintiff to potential employers.

49. July 27, 2015 was Plaintiff's last day of work where she was assigned to the ambulance. During her shift, Plaintiff's name and credentials were manually removed from the computer system, leaving Plaintiff and her partner unable to write reports or provide service to patients. The matter was corrected by Battalion Chief Heather Childress who is responsible for adding and removing the employees. There were many former employees still registered in the system, which suggests that this was a deliberate act of pettiness and retaliation toward the Plaintiff.

50. Plaintiff is asking for relief due to the actions of the Defendant as outlined in this Complaint.

Signed & Dated by Ruth Anne L. Phillips, Pro Se _RAHPhell_ 10-17-2016

## **Relief**

For Trial by jury;

    (a) For compensation for lost wages, benefits and other remunerations;

    (b) For compensatory damages, including emotional distress;

    (c) For punitive damages against the Defendants in an amount to be determined by a jury;

    (d) For Plaintiff legal costs and fees – including previous legal fees and costs:

    (e) For any and all costs expended herein;

    (f) Enjoin Defendant from discriminating or retaliating against Defendant in the future; and

    (g) For such other and further relief as the Court deems equitable and just.

Respectfully Submitted by:

Ruth Anne L. Phillips, Pro se

P.O. Box 97

Lpfafacebook@gmail.com

434-942-4056

_____, pro se     10-17-2016

Signed by Ruth Anne L. Phillips                 Dated

-     Attachment: Original Dismissal and Notice of Rights from EEOC Dated August 18, 2016

Signed & Dated by Ruth Anne L. Phillips, Pro Se _____ 10-17-16