# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF VIRGINIA
## Lynchburg Division

| | | |
|---|---|---|
| Ruth Anne L. Phillips, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Docket: 6:16-cv-00063 |
| Vs. | ) | Jury Demanded |
| | ) | |
| Lynchburg Fire Department, | ) | |
| And City of Lynchburg, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT
## DEMAND FOR A JURY TRIAL

Plaintiff, Ruth Anne L. Phillips, was an exceptional employee. She received raving reviews prior to her charge of discrimination, and was by all accounts a compassionate, capable and desirable employee with excellent attitude. Ms. Phillips brings this action to redress unlawful employment discrimination and hostile work environment based on age, gender, sex, sexual harassment, assault, and retaliation perpetrated against her by the Lynchburg Fire Department and the City of Lynchburg (hereafter referred to as Defendants).[1]

Defendants created a sexually charged hostile work environment when utilizing, approving, and otherwise turning the other way to abusive language such as wh*re, b*tch, sl*t, lesbian, dyke, and n*gger. Defendants created a sexually charged hostile work environment, when posting, acknowledging and otherwise turning the other way to pornography that otherwise degraded the female firefighters and paramedics. When made aware of these problems, Defendants turned the other way and indeed warned Plaintiff that she would be retaliated if she pursued same. Plaintiff alleges and contends Title VII requires action by Defendants, notwithstanding her abilities to "confront" the perpetrators. It is not enough to contend, "boys will be boys".

Defendants created a hostile work environment when regularly using and agreeing to statements that women were not strong enough to join the department, that the department was

---

[1] Plaintiff apologizes to the Court for language outlined in this Complaint, but believes the statements must be repeated in order to reasonably plead the nature and extent of these allegations.

weaker because of them, and that women lowered the training standards. In one training statement, women lead to the "p*ssyfication" of the department. The environment created allowed for Plaintiff's coworkers to expose their genittals to her, ask and comment on her sex life, her sex partners, and her gender identity. Nothing was done.

Despite raving reviews, Ms. Phillips resigned on or about July 2015. Plaintiff claims this was a constructive discharge as no woman should be called a b*tch, wh*re, or lesbian at their place of work. No woman should regularly be exposed to sexually charged comments, photos, jokes, genitals, and parn at work. "Boys will be boys" is no longer a defense to Title VII claims.

## Jurisdiction

1. This Court has Federal Question jurisdiction over the claims raised herein, pursuant to Title VII of the Civil Rights Act and 42 USC 1981(a) as well as the Age Discrimination in Employment Act (ADEA) pursuant to 29 USC 621 et seq.

2. Federal supplemental jurisdiction is appropriate over state claims pursuant to 28 U.S. Code § 1367 as said claims arise directly out of the discrimination and retaliation for filing a discrimination claim.

3. Pursuant to 28 U.S.C. 1391 venue is appropriate in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated. The events giving rise to claim in this matter is the employment in Lynchburg, Virginia and the discrimination in Lynchburg, Virginia.

4. Plaintiff, was employed in Virginia and at all times relevant to this claim was a citizen of Lynchburg, Virginia.

5. Defendant is The City of Lynchburg, Virginia and the City of Lynchburg Fire Department. The City Attorneys' office is located on 900 Church Street, Lynchburg VA 42504.

6. Venue is appropriate as the acts of the Complaint took place in Lynchburg, Virginia, Plaintiff domiciled in Lynchburg, and the employer is located in Lynchburg.

7. Plaintiff sufficiently exhausted all available administrative remedies on her claims as the EEOC issued a dismissal and notice of right to file a civil action concerning these claims fewer than 90 days of the filing of this action. The Right to File Notice is attached hereto as Exhibit A.

**Allegations**

Count 1
Title VII
Sex Discrimination
Hostile Work Environment

8. Plaintiff is a female and within a protective class.

9. Plaintiff was qualified for her position.

10. Plaintiff suffered discrimination within the terms and conditions of employment because of her sex (2000e-2(a)(1)) wherein she was subjected to a hostile work environment of severe and pervasive harassment.

11. As a result of the harassment, Plaintiff suffered adverse actions in the form of financial loss, loss of pay, failure to promote an ultimately constructive discharge.

12. As a result of the harassment, Plaintiff feared for her safety.

13. Sexual comments, photos, statements that women should not be firefighters, and an outright assault created an environment that was objectively intolerable by a reasonable person.

14. Plaintiff was treated differently from other similarly situated male firefighters.

15. Plaintiff suffered damages to include loss income, pain and suffering, fear, and specifically punitive damages according to proof.

**Plaintiff pleads the following facts in proof of severe and pervasive Hate Speech against women – sexual**

16. From June 2013 to July 2015, Plaintiff was subjected to negative comments in regards to women.

17. Plaintiff suffered discrimination within the terms and conditions of employment because of her sex (2000e-2(a)(1)) wherein she was subjected to a hostile work environment of severe and pervasive harassment when a male Cadet consistently referred to Plaintiff and other women as b*ches and wh*res in the work place.

18. Plaintiff suffered discrimination within the terms and conditions of employment because of her sex (2000e-2(a)(1)) wherein she was subjected to a hostile work environment of severe and pervasive harassment when supervisors and cadets frequently used the term b*tch, ho and wh*re to describe women in the work place.

19. Plaintiff attempted to solve the problem herself, when she advised her coworkers that the name calling was unacceptable.

20. On Plaintiff's first day of her assignment at Station 4 in June 2013, Plaintiff was told by another firefighter, "I hear you like black guys – too bad about your boyfriend." (He was referring to one of the African American Cadets who did not complete the

Academy.) The firefighter further stated, "I heard his d*ck was so big, that he had to wear special shorts." He then suggested that Plaintiff would be able to verify the size of the male's penis.

21. On August 14, 2014 two of the Plaintiff's co-workers bragged about "f*cking and scr*wing women" and referred to women in pejorative terms while Plaintiff was working in the kitchen. Plaintiff reported the incident to Captain Darryl Hamlett, who dismissed the behavior as immature.

22. On or around the month of September 2014, Captain Tom Bartell called Plaintiff into the office at Station Four and told her he wanted to get to know her. During their conversation, he told Plaintiff that his wife was a tattoo model. When Plaintiff asked if he had any photos, Captain Bartell showed Plaintiff a photo of a nude woman with her hand positioned over her vagina as though she were masturbating.

23. To the Plaintiff, another female Captain was referred to as a slut.

24. Plaintiff's coworker was called a "Stupid Bitch" by another employee and acting Captain Lewis Thomas told the perpetrator to apologize. No further action was taken.

25. Plaintiff was retaliated against and ostracized when she verbally supported the individuals who were being maligned or when she reported the malfeasance to superiors.

**Plaintiff pleads the following facts in proof of severe and pervasive Hate Speech against women –general**

26. Plaintiff suffered discrimination within the terms and conditions of employment because of her sex (2000e-2(a)(1)) wherein she was subjected to a hostile work environment of severe and pervasive harassment starting when the Defendant(s)

created a hostile work environment by promoting racism, bigotry, sexual harassment and hate speech.

27. Supervisors regularly made statements of racism, bigotry, hate speech and sexual harassment and did nothing when others made these statements in their presence creating a hostile environment forcing constructive discharge.

28. Attempts to combat these acts by the Plaintiff in the form of verbal complaints to Captain Allen Carwile and Battalion Chief Robert Lipscomb were dismissed or met with retaliation by her superiors and coworkers.

29. During the month of July 2013 Captain Darrell Hamlet walked into the kitchen where President Obama was on the television and in front of Plaintiff called President Obama "…that N*gger."

30. Plaintiff sought guidance from Master Firefighter Quincy Scott of the LPFA who advised her that it was up to her if she reported it - and that he would support her either way - but warned that the Defendant had a history of retaliation against those who complained. Plaintiff was on probation and was fearful that reporting the incident would cause her to lose her job and did not pursue it further.

31. Battalion Chief Jason Campbell posted a photo of two African American women from the community on his Facebook page with a derogatory comment. The African American Firefighter who reported the incident was subjected to retaliation and Jason Campbell was promoted to Deputy Chief.

32. In the presence of the Plaintiff, male firefighters referred to a black firefighter recruit being called "Cleetus" as a slur.

33. In the presence of the Plaintiff white recruits repeatedly hit a black recruit in the back of the head as they ran by.

34. Plaintiff complained about the physical abuse to Battalion Chief Robert Lipscomb who told her she needed to "stop mothering everyone."

35. While running stairs at Monument Terrace in Lynchburg, five Cadets yelled at an African American male who was walking down the street to pull up his pants. They yelled to the young man that he must want "to be f*cked up the a*s" because he wore his pants like that. This was done in the presence of Master Firefighter Christopher Milner who did not stop the harassment. He has since been promoted to Captain.

36. On March 3, 2015, Captain Kenny Turner stated that the African Americans protesting in Ferguson Missouri were "criminals" and "animals" and they should all be in jail.

37. Captain Turner referred to the corner market as "Ahkmed's" and the owner as a "raghead."

38. The hostility directed at Plaintiff by her the firefighters and Captain Kenny Turner for reporting the behavior, caused Plaintiff to cancel her next training module at that station.

39. On or around April 22, 2015 one of the firefighters from Station 6 posted a view of the city and referred to it as the "ghetto."

40. On or around May 2015, Captain Darrell Hamlett referred to the LBGT community as a bunch of "f*cking f*ggots," "fags" and "queers" in regards to the Equality in Marriage Act. He said that if he saw two f*ggots kissing at a restaurant he would be forced to get up and leave. He said that he was sorry if it was insulting to Plaintiff, but he was a Christian and had certain beliefs.

41. On May 19, 2015 one of the firefighters at pump class referred to a former coworker as "Muslim Rudy" and bragged about telling him that in Lynchburg they were "Christians who did things the Christian way."

42. Captain Allen Carwile showed a YouTube video called "Funny Arab Shooting Gun." The video had no moral or educational value as to the work of a firefighter or medic. During the video, one of the Cadets was encouraged by the Captain to provide a running commentary in a stereotypical, offensive and cartoonish accent which referenced terrorists, Muslims and Bin Laden. Afterwards the same Cadet asked if the class would be able to watch the one with "girls shooting guns."

43. In June, 2013, Plaintiff was assigned to Station 4 to begin her duties as a Firefighter/EMT. During her assignment, transmission fluid was put under her car and her equipment was moved. Plaintiff incurred financial costs as a result of the transmission fluid. When Plaintiff reported the incidence to Captain Darrell Hamlett, he stated that the actions were pranks that were sometimes done to the new Recruits and she was lucky it wasn't worse.

44. On September 19, 2013 two of the Plaintiff's coworkers openly mocked an African American Patient who had called 911 to report a rape.


**Plaintiff pleads the following facts in proof of severe and pervasive Hostile environment Against Women Firefighters- sexual**

45. On or around April 30, 2014 Plaintiff's partner removed his pants and deliberately exposed his penis to the Plaintiff in the co-ed locker room.

46. The behavior was reported to Captain Darrell Hamlet and the individual was transferred to Station 1. However, he was promoted to Master Firefighter.

47. Plaintiff suffered discrimination within the terms and conditions of employment because of her sex (2000e-2(a)(1)) wherein she was subjected to a hostile work environment of severe and pervasive harassment starting when she was subjected to sexual imagery of women and pornography during class from male employees using their iPads provided by the Department.

48. Battalion Chief Lipscomb told Plaintiff that the iPads were available to be used for personal use and the department was not responsible for monitoring their content.

49. Plaintiff suffered discrimination within the terms and conditions of employment because of her sex (2000e-2(a)(1)) wherein she was subjected to a hostile work environment of severe and pervasive harassment starting when the facilities provided one unisex bathroom for use as a toilet and changing area.

50. The facilities discriminated against females and specifically Plaintiff because the male employees were allowed to change in the classroom.

51. No separate facilities were provided for female employees to change, who were frequently penalized for being late due to their inability to access the bathroom.

**Plaintiff pleads the following facts in proof of severe and pervasive Hostile environment against women firefighters – non sexual**

52. Plaintiff suffered discrimination within the terms and conditions of employment because of her sex (2000e-2(a)(1)) wherein she was subjected to a hostile work environment of severe and pervasive harassment when on July 20, 2013, the Plaintiff was told by one of her white, male coworkers that she was too old to be hired as a firefighter and that black people, women and women like her had caused him delays in getting hired because there were quotas that needed to be filled.

53. To the Plaintiff, a female Battalion Chief was regularly referred to as a fat a*s, a fat dyke, and a lesbian by the Plaintiff's Captain.

54. Coworkers regularly called the female medical director a dyke and incompetent when speaking to Plaintiff.

55. Coworkers regularly called another female Captain was referred to as an idiot and stupid and "the only reason she had been promoted was because they needed to hire a female."

56. The pervasive atmosphere, allowed a petri dish of discrimination.

57. Plaintiff's male partner consistently maligned and berated about her gender, age and beliefs. He berated her as a working mother.

58. Plaintiff's partner frequently refused to provide her with directions when she was driving and Plaintiff became concerned for her own safety and those of her patients.

59. A captain questioned Plaintiff's arm strength and said "older people" can't get up in the night and why did she think she could.

60. On May 21, 2015, Captain Tom McCriccard referred to the lack of testing standards in the fire service as the "pussification of the fire service." This was done in front of the entire Pump class.

61. On or around the month of June 2015, one of Plaintiff's coworkers stated that another female firefighter hadn't been fired yet, because she was giving Chief Ferguson "blow jobs." He further disparaged Plaintiffs place of residence and referred to it as the "ghetto." Captain Darrell Hamlett was present at this time.

62. On July 7, 2015 Plaintiff was required to complete a protocol assessment after completing all of the national requirements to work as an EMTI. After Plaintiff

completed the assessment, Plaintiff returned to the conference room and was told that two other employees who were also testing, had been told what they would be tested on by Captain James Mitchell. Both of the employees admitted to the breach and both passed the assessment. The Plaintiff subsequently failed the assessment and reported the cheating to Captain Darrell Hamlett, who said he didn't doubt it, but there was nothing he could do. Furthermore, in response to the failing of the test, Plaintiff was told she would be transferred to Station 1.

63. On or around the month of July 2013 Plaintiff attempted to join the Defendant's charity softball team, but dropped out when she was told that women were only allowed to play catcher and they didn't want too many females on the team.

64. On or around May 2014, Plaintiff received her Public Professional Certificate from the City of Lynchburg. During the harassment and discrimination training, Plaintiff was grouped with Captain John Norman who asked Plaintiff if she was a lesbian.

65. Plaintiff suffered adverse actions for reporting the discrimination and harassment when she was barred from the bicycle team as a result of her age, her sex, and her reporting the harassment.


**Assault**

66. The Defendants maintain an environment where assaults on female firefighters was known, encouraged, and regularly committed.

67. On September 20, 2013 the Plaintiff was physically assaulted during Mayday training by an employee of the Lynchburg Fire Department.

68. Plaintiff was completing an exercise in the darkened burn building and was pushed with enough force that she fell backward and into the wall.

69. The incident was reported to Captain Darrell Hamlett, Battalion Chief Robert Lipscomb and Battalion Chief Ninette Heath. Plaintiff was advised that there was nothing that could be done, because they didn't know who did it. Captain Darrell Hamlett urged Plaintiff to get past what had happened to her at the Academy and to move on.

**Retaliation**

70. Plaintiff suffered discrimination within the terms and conditions of employment because of her sex (2000e-2(a)(1)) wherein she was subjected to a hostile work environment of severe and pervasive harassment when on October 3, 2013 a firefighter from Station 3 advised Plaintiff that Captain Kenny Turner had told his crew that Plaintiff was not allowed to work at Station 3 or trade shifts to work there.

71. Plaintiff advised Battalion Chief Robert Lipscomb who said the Captains to decide who worked at their stations and there was nothing he could do. When Plaintiff asked the Battalion Chief if any Captain had ever singled out anyone for this type of banishment, he declined to answer. This affected the Plaintiff financially.

**Constructive discharge**

72. Plaintiff hereby incorporates all the allegations in paragraphs 1 through the present that resulted in the adverse action of constructive discharge.

73. Plaintiff alleges the factual statements preceding, are evidence of an objective intolerable work environment for a reasonable person.

74. On or around July 9, 2015 Plaintiff gave two weeks' notice to Captain Darryl Hamlett in order to leave her job at the Lynchburg Fire Department due to the incidents outlined in this Complaint.

75. On July 9, 2015 Plaintiff spoke with Battalion Chief Robert Lipscomb about the poor treatment of women and minorities at the fire department - and specifically identified a female who had been subjected to harassment. He told Plaintiff that the employee had **brought it on herself**.

76. On July 11, 2015, Plaintiff spoke with Battalion Chief Michael Thomas about the poor treatment of women and minorities at the fire department – and specifically brought up two females who had been subjected to harassment. He stated that the women had brought the harassment upon themselves. He specifically cited the reason for the harassment as one of them having had an affair with a married man. He further stated that she shouldn't have had a child out of wedlock.

77. On July 13, 2015 Retired Battalion Chief Ninette Heath posted on her Facebook page a story about the harassment she had been subjected to by the Defendant. At that time, a male firefighter employed with the Lynchburg Fire Department posted "1 Corinthians 14 34 – 35 {Women Should Remain Silent}" and referenced "the homosexual onslaught" and the "battle flag of the Confederate Army." This was done in a written conversation that included Captain John Norman who discounted the retired Battalion Chief's story and stated that things had gotten better at the department.

Count 2
Title VII

Anti-Retaliation 703(a)
Assault

78. Plaintiff is a female attempting to work pursuant to protections outlined in Title VII to work in a non-hostile, nondiscriminatory environment without harassment.

79. Defendants, were aware, that Plaintiff was a female attempting to work as protected by Title VII as evidenced by her numerous complaints to multiple supervisors during her employment.

80. Defendants took material adverse employment actions against Plaintiff for attempting to exercise her rights both during her employment ass outlined in Count 1 and after she filed her complaint.

81. As a direct result of her complaints to the fire department supervisors, Plaintiff "failed" tests.

82. As a direct result of her complaints to the fire department supervisors, Plaintiff was excluded from department activities.

83. As a direct result of her complaints to the fire department supervisors, Plaintiff banished from certain houses.

84. As a direct result of her complaints to the fire department supervisors, Plaintiff was assaulted during tests.

Count 3
Title VII
Anti-Retaliation 703(a)
Poor Job reference

85. On July 14, 2015 Plaintiff filed a Charge of Discrimination with the EEOC.

86. The charge was amended to include an additional charge of Retaliation on July 19, 2016.

87. After filing the charge, and as a direct and sole result of same, Defendant has made disparaging comments, reviews or statements about Plaintiff to potential employers.

88. Defendants are disparaging Plaintiff to potential employers as a direct result of her EEOC charge as evidenced by the excellent reviews prior to the charge.

89. As a direct result of these disparaging remarks, the Plaintiff has lost employment and financial opportunities.

Count 4
Age Discrimination
29 USC 621

90. Plaintiff worked for the Defendant as a firefighter/EMTB from approximately early March 2013 through late July 2015.

91. Plaintiff was over the age of forty and in a protected class pursuant to the Age Discrimination Act throughout her employment.

92. During the Lynchburg Fire Department Academy in May 2013, Plaintiff was assigned to work with a male who referred to elderly workers at the Home Depot as "old, senile fuckers" who should be fired because they were deaf and couldn't do their jobs. He told Plaintiff they were "her people" and maybe she could get a job there after she washed out of the Academy.

93. Plaintiff described the behavior to Battalion Chief Ninette Heath who advised that Plaintiff would be hearing a lot of that kind of talk.

94. Plaintiff reported the statements to Battalion Chief Robert Lipscomb who advised Plaintiff that she needed to figure out how to get along with others and maybe find a liberal support group. He also advised that she needed to tone down her beliefs and they were upsetting people.

95. RN Ripley made statements on March 5, 2013 proving age was a determinative factor of the discrimination.

96. Plaintiff was required to have a physical as a requirement of employment by the Defendant.

97. Plaintiff's physical was completed at the Johnson Health Center in Lynchburg, VA where Plaintiff was examined by RN Sam Ripley.

98. Age was a determinative factor in discrimination and the constructive discharge when Mr. Ripley subjected Plaintiff to a hostile and discriminatory line of questioning and comments in regards to her age and gender.

99. Age was a determinative factor in discrimination and the constructive discharge when Ripley advised Plaintiff that she should consider another job and that being a firefighter was hard work.

100. Age was a determinative factor in discrimination and the constructive discharge when RN Ripley advised that his two sons were firefighters and that the job wasn't handed to them like it had been to the Plaintiff.

101. Age was a determinative factor in discrimination and the constructive discharge when he requested that Plaintiff provide him with the date of her last menses and followed up with, "or if you still have one," and laughed at Plaintiff.

102.  Age was a determinative factor in discrimination and the constructive discharge when he stated that women did not have the upper arm strength to be firefighters and grilled her on how many push-ups she was able to complete.

103.  Age was a determinative factor in discrimination and the constructive discharge when he further stated that the Plaintiff's lack of bone mass would impede her abilities and suggested, without evidence, that she had osteoporosis.

104.  Age was a determinative factor in discrimination and the constructive discharge when RN Ripley stated that older women don't have the "lung capacity" to do the job.

105.  Age was a determinative factor in discrimination and the constructive discharge when Plaintiff reported the incident to her hiring supervisor, Battalion Chief Robert Lipscomb and he responded by saying, "Welcome to the fire department!" and not to worry about "Sam" because he was simply being protective of his boys.

106.  On March 3, 2015, Plaintiff was a Paramedic student at station 3 and was asked by one of the male firefighters who she thought she was that she could do the job at her age. He questioned her arm strength and said "older people" can't get up in the night and why did she think she could.


Count 5
Whistle Blower Retaliation


107.  Plaintiff incorporates her prior allegations herein.

108.  Plaintiff reported unlawful acts such as porn, hate speech, an assault, and sex and age discrimination.

109.    As a result of Plaintiff's reporting of unlawful hate speech based upon religion, sex, gender, and race, Plaintiff was retaliated and discriminated against resulting in her constructive discharge.

110.    As a result of reporting the unlawful acts, Plaintiff was threatened with retaliation multiple times, barred from certain houses, barred from activities, and actively harassed.

111.    As a result of the retaliation, Plaintiff suffered actual and punitive damages.


Count 6
Vicarious Liability

112.    Plaintiff regularly reported the discrimination, sexual harassment, age discrimination and hostile work environment to the supervisors at the Lynchburg Fire Department.

113.    In deciding whether an employer has vicarious liability in a case such as this, the Court turns to agency law principles, for Title VII defines the term "employer" to include "agents." §2000e (b).

114.    Plaintiff reported the age and sexism comments by RN Ripley to her hiring supervisor, Battalion Chief Robert Lipscomb and he responded by saying, "Welcome to the fire department!" and not to worry about "Sam" because he was simply being protective of his boys.

115.    Plaintiff reported the violation of company policy wherein male Cadets and supervisors regularly violated company policy by socializing outside of work, thereby providing an unfair advantage to Master Firefighter Christopher Milner,

Master Firefighter Matthew Smith, Captain John Ripley, Captain Allen Carwile and Battalion Chief Robert Lipscomb who failed to enforce the policy.

116.  Plaintiff reported the policy infraction to Battalion Chief Ninette Heath and she advised Plaintiff that she wasn't surprised but if Plaintiff pursued the matter further, she would likely be retaliated against or fired.

117. Plaintiff reported the disparaging remarks against the elderly in May 2013 where a male who referred to elderly workers at the Home Depot as "old, senile fuckers" who should be fired because they were deaf and couldn't do their jobs to Battalion Chief Ninette Heath, she advised that Plaintiff would be hearing a lot of that kind of talk. When the Plaintiff reported the behavior to Battalion Chief Robert Lipscomb, he advised Plaintiff that she needed to figure out how to get along with others and maybe find a liberal support group. He also advised that she needed to tone down her beliefs and they were upsetting people.

118. During the Lynchburg Fire Department Academy from March 2013 through May 2013, Plaintiff was subjected to sexual imagery of women and pornography during class from employees using their iPads provided by the Department.  When Defendant advised Battalion Chief Lipscomb of the issue, he told Plaintiff that the iPads were available to be used for personal use and the department was not responsible for monitoring their content.

119. During the month of July, 2013 Captain Darrell Hamlet walked into the kitchen where President Obama was on the television and in front of Plaintiff called President Obama "…that Nigger." Plaintiff sought guidance from Master Firefighter Quincy Scott of the LPFA who advised her that it was up to her if she

reported it - and that he would support her either way - but warned that the Defendant had a history of retaliation against those retaliating against employees who complained. Plaintiff was on probation and was fearful that reporting the incident would cause her to lose her job and did not pursue it further

120.    On May 19, 2015 at EVOC/Pump training, one of the firefighters showed a picture of retired female Battalion Chief which she had posted on her Facebook page. It was a photo of the female holding a fish that she had caught. The same firefighter stated, said, "Look at Ninette showing off her tits on Facebook!" Captain Tom McCriccard asked to see the picture and said, "Wow, is that our Ninny?" The phone was passed around the group to 9 other employees and Battalion Chief Greg Wormser. Plaintiff was the only female present. Some of the males made additional lewd comments and another female firefighter's breasts which were described as disgusting. One of the firefighters stated after someone had seen her pumping breast milk he threw up and required therapy. That same day, Plaintiff reported the incident to Captain Darrell Hamlett. He told her that she could make a formal complaint, but she would be retaliated against. He further reported that she already was not well liked and by reporting it, she would be subjected to further harassment and retaliation.

121.    Captain Darrell Hamlett reported the incident to Battalion Chief Robert Lipscomb, who reiterated that they could set up a meeting with Captain McCriccard to discuss it and agreed it was inappropriate, but recommended that Plaintiff wait until after the class was over so she would not be retaliated against during the remainder of the class. He suggested that Captain McCriccard was capable of "making sure

she failed." After the class concluded, Plaintiff was told that Captain McCriccard was on vacation and Plaintiff could have a meeting with him when he returned. Plaintiff declined the meeting because she did not believe that her supervisors had the ability to protect her from further discrimination, harassment or retaliation. Greg Wormser was promoted to Deputy Chief in October of 2015.

122. *After being constructively discharged, o*n July 9, 2015 Plaintiff spoke with Battalion Chief Robert Lipscomb about the poor treatment of women and minorities at the fire department - and specifically identified a female who had been subjected to harassment He told Plaintiff that the employee had brought it on herself.

123. Supervisors, and individuals in authority, while acting as agents for the Fire Department and City failed to correct, participated in and promoted the hostile work environment that caused Plaintiff's constructive discharge to include Battalion Chief Robert Lipscomb, Captain Darrell Hamlett, Captain Tom McCriccard, Battalion Chief Ninette Heath Master, Firefighter Christopher Milner, Master Firefighter Matthew Smith, Captain John Ripley, Captain Allen Carwile and any others outlined in previous counts, incorporated herein who failed to enforce Title VII, the ADEA, and other department policies.

124. The Department consistently turned the other way and failed to address the hostile work environment created, and did not create, address, or enforce policies in line with ADEA or Title VII.

125. The Department and City are vicariously liable for the actions and inactions of their employees, agents and supervisors.

126. As a result of the department's failure to enforce the civil rights laws, Plaintiff suffered damages.

Count 7
Negligence
Defamation

127. On or about June 1, 2014, supervisor Hamlett provided Ms. Phillips with a positive job review wherein all expectations were met and many were exceeded.

128. On or about June 9, 2015, supervisor Hamlett provided Ms. Phillips with a positive job review wherein all expectations were met and many were exceeded.

129. On or about 30 days following said job evaluation, Ms. Phillips resigned and filed an EEOC complaint.

130. On May 25, 2016 Captain Darrel Hamlett of the Lynchburg Fire Department provided a third party a negative written job reference.

131. Hamlett completed a performance evaluation questionnaire to the third party rating Plaintiff as poor or inadequate in five out of thirteen categories.

132. Hamlett rated Plaintiff average in areas where she exceeded expectations on her job evaluation(s).

133. Said factual assertions were made to a third party regarding Plaintiff's skills and trade in her profession.

134. Said written statements harmed the reputation of Plaintiff so as to lower her the estimation in the community and deter third persons (potential employer) from associating or dealing with her.

135. Said performance evaluation was false and inconsistent with the actual employee reviews.

136. Said statements made to the employer were made with malice and actuated by motives of personal spite, or ill-will.

137. Hamlett's words were motivated by and spoken with "some sinister or corrupt motive such as hatred, revenge, personal spite, ill will, or desire to injure the plaintiff; or ... that the communication was made with such gross indifference and recklessness as to amount to a wanton or willful disregard of the rights of the plaintiff as evidenced by the absolute contradiction to his actual performance reviews of the Plaintiff before she filed the EEOC charge.

138. Hamlett knew the statements were false having prepared a glowing report of Plaintiff's skills in each and every one of her job feedback reports.

139. As such, the reference provided by Captain Hamlett to a third party is false, misleading, and caused damages.

140. Said statements rise above opinion as they can be proven true or false.

141. Said comments to a third party potential employer regarding an employment reference is per se defamatory.

142. As a result of said damages, Ms. Phillips was unable to obtain employment, suffered financial loss, suffered loss of reputation, and suffered emotional distress.

143. Defendant's actions are per se defamatory as they were made to impute to a person unfitness to perform the duties of an office or employment of profit, or want of integrity in the discharge of the duties of such an office or employment.

# Relief

Wherefore, Plaintiff requests the following relief from this esteemed Court;

For Trial by jury;

For compensatory damages against the Defendants jointly and severally, or as the trier of fact may allocate, in an amount to be determined by a jury;

For punitive damages against the Defendants in an amount to be determined by a jury;

For any and all costs expended herein;

For Plaintiff legal costs and fees;

For such other and further relief as the Court deems equitable and just.


Respectfully Submitted:                         s/Constance F. Mann

                                                Constance F. Mann
                                                **TN BPR # 014616**
                                                **CA BPR # 165164**
                                                The Law Offices of Constance F. Mann
                                                1107 Battlewood Street
                                                Franklin, TN 37069
                                                Phone:  (615) 724-1800
                                                Fax: (615) 724-1809
                                                Email: cmannlaw@msn.com


                                                Local Counsel

                                                Law Offices of Kathleen M. Mizzi Todd
                                                75 North Mason Street, Suite 201
                                                Harrisonburg, Virginia 22802
                                                Phone: (540) 432-6829
                                                Fax: (540) 433-2559
                                                kmizzitodd@hotmail.coms/

<u>CERTIFICATE OF ELECTRONIC SERVICE</u>

I hereby certify, that we have served the Amended Complaint on all Filing Users through the electronic filing system.

Date of Service: January 9, 2016

Served by:

<u>s/Constance F. Mann</u>

Constance F. Mann
**TN BPR # 014616**
**CA BPR # 165164**
The Law Offices of Constance F. Mann
1107 Battlewood Street
Franklin, TN 37069
Phone: (615) 724-1800
Fax: (615) 724-1809
Email: cmannlaw@msn.com

Recipient(s):

Jennifer D. Royer, VSB # 68099
GUYNN & WADDELL, P.C.
415 S. College Avenue
Salem, Virginia 24153
Jenniferr@guynnwaddell.com

Law Offices of Kathleen M. Mizzi Todd
75 North Mason Street, Suite 201
Harrisonburg, Virginia 22802
kmizzitodd@hotmail.coms/