# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

| | |
|---|---|
| RUTH ANNE LOUISE PHILLIPS,<br><br>                      *Plaintiff*,<br><br>v.<br><br>LYNCHBURG FIRE DEPARTMENT AND CITY OF LYNCHBURG, VA.,<br><br>                      *Defendants*. | CASE NO. 6:16–cv–00063<br><br>OPINION<br><br>JUDGE NORMAN K. MOON |

Plaintiff, a female firefighter, brings this employment discrimination lawsuit, alleging acts of sex, age, and retaliation discrimination by her former employer, the City of Lynchburg, and by the "Lynchburg Fire Department." Defendants have moved to dismiss, asserting—among other things—a lack of exhaustion, the non-entity status of the Fire Department, and various arguments on the merits. The Complaint contains sufficient facts to sustain a sexually hostile work environment claim, so that claim will proceed to discovery. The Complaint also is rife with assertions of racist and homophobic comments by Defendants' employees. While these allegations are salacious, they are irrelevant to the legal issues because Plaintiff is not alleged to be a member of the relevant protected classes, so she cannot litigate claims based on those classes. The other claims in the Complaint must be dismissed from the case, as must the Fire Department. Accordingly, the motion to dismiss will be granted in part and denied in part.

## I. LEGAL STANDARD

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve

contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

A court need not "accept the legal conclusions drawn from the facts." *Eastern Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). "Factual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, with all allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## II. FACTS AS ALLEGED

### A. Sex and Age Discrimination

Plaintiff was employed as a firefighter with the Lynchburg Fire Department from March 2013 to July 2015. (Dkt. 22 ¶ 90). Defendants are the City of Lynchburg and the Lynchburg Fire Department. (*Id.* ¶ 5). Plaintiff alleges that she was subjected to a sexually hostile work environment. (*Id.* ¶ 10). Because of the fire department's alleged failure to correct the hostile work environment, she was constructively discharged. (*Id.* ¶ 27).

From June 2013 to July 2015, Plaintiff alleges she endured frequent and consistent

– 2 –

Case 6:16-cv-00063-NKM-RSB   Document 33   Filed 06/05/17   Page 2 of 17   Pageid#: 265

sexualized language in the workplace.  (*Id.* ¶¶ 17–18).  Co-workers bragged about "f*cking and scr*wing women" and referred to women in pejorative terms.  (*Id.* ¶ 21).  Supervisors and cadets consistently called Plaintiff and other women as "b*ches and wh*res."  (*Id.* ¶¶ 17–18).  Furthermore, on at least two occasions, male co-workers called two female co-workers "slut" and "stupid bitch."  (*Id.* ¶ 23–24).  Plaintiff was also excluded from the department softball team on account of her sex.  (*Id.* ¶ 63).

Additionally, Plaintiff alleges she was exposed to graphic sexual images and situations during her employment.  On April 30, 2014, while Plaintiff and a co-worker were in the co-ed locker room, the co-worker removed his pants and deliberately exposed his penis to Plaintiff.  (*Id.* ¶ 45).  Plaintiff reported this event to a supervisor.  (*See id.* ¶ 46).

In September 2014, during a meeting with a captain, the captain showed Plaintiff a photo of a nude woman with her hand positioned over her vagina as if she were masturbating.  (*Id.* ¶ 22).  Furthermore, during a class Plaintiff attended, male co-workers displayed pornography on iPads provided by the fire department, and supervisors took a *laissez faire* attitude toward the event.  (*Id.* ¶¶ 47–48).  Then, at a May 19, 2015 training, a co-workers displayed a picture of a female retired battalion chief and said, "Look at Ninette showing off her tits on Facebook!", while others made similarly lewd remarks.  (*Id.* ¶ 120).  While Plaintiff was present, the picture was passed to a group of ten other male employees, including the battalion chief.  Several of the males made lewd comments about the female firefighter's breasts.  (*Id.*).  Although supervisors again learned of the incident, they took little or no action in response.  (*Id.* ¶ 121).

Plaintiff, who was over the age of forty, further contends she experienced age discrimination.  (*Id.* ¶¶ 90–91).

On March 3, 2013, one of her co-workers questioned her arm strength and whether she

– 3 –

could do the job, saying "'older people' can't get up in the night." (*Id.* ¶ 106).

On March 5, 2013, Plaintiff went to the Johnson Health Center in Lynchburg to receive a physical examination, a requirement for her employment. (*Id.* ¶¶ 96–97). During the physical, the nurse told Plaintiff that she should consider another job because being a firefighter was hard work. (*Id.* ¶ 99). The nurse mocked her by asking the date of her last menses and followed up with "or if you still have one." (*Id.* ¶ 101). The nurse said that women did not have the upper arm strength to be firefighters, suggested to Plaintiff that she had osteoporosis, and stated that Plaintiff's lack of bone mass would impede her abilities. (*Id.* ¶¶ 102–03). Plaintiff reported these statements to her supervisor, and the supervisor allegedly said "Welcome to the fire department!" (*Id.* ¶ 105).

Two months later, during the Lynchburg Fire Academy in May 2013, one of her co-workers spoke poorly of elderly workers at a Home Depot, saying they should be fired because they were deaf and unable to do their jobs. (*Id.* ¶ 92). The co-worker then analogized Plaintiff to the Home Depot employees. (*Id.*). Plaintiff reported the comments to two battalion chiefs, who dismissed them and told Plaintiff she "would be hearing a lot of that kind of talk." (*Id.* ¶ 93–94).

**B.     Other Allegations**

Plaintiff alleges that she was retaliated against for reporting the harassment to her superiors and for verbally supporting the individuals who were being subjected to the alleged harassment. (*Id.* ¶ 25). On October 3, 2013, Plaintiff learned that the captain of one of the fire stations told his crew that Plaintiff was not allowed to work at the station or trade shifts there. (*Id.* ¶ 70). As a result of being unable to work at that station, Plaintiff suffered financially. (*Id.* ¶ 71). Plaintiff further alleges that because she complained to her fire department supervisors, she was excluded from department activities and banished from certain houses. (*Id.* ¶¶ 82–83).

– 4 –

Because of her complaints, she also received "failed" grades on tests and was assaulted. (*Id.* ¶¶ 81, 84).

Plaintiff alleges that she was defamed because her supervisor gave Plaintiff a negative employment reference after Plaintiff filed a change of discrimination with the EEOC. (*Id.* ¶¶ 86–88). Purportedly, the negative job performance was false and inconsistent with Plaintiff's actual performance reviews. (*Id.* ¶ 135). Furthermore, Plaintiff's supervisor knew the statements in the job reference were false and the supervisor's words were motivated by malice. (*Id.* ¶¶ 137–38). As a result of these alleged defamatory statements, Plaintiff lost employment opportunities and suffered financially. (*Id.* ¶ 89).

### III. ANALYSIS

#### A. The Fire Department as a Cognizable Party

Defendant Lynchburg Fire Department argues that it is not a legal entity that can be sued, but rather an operating arm of the City of Lynchburg. Judge Cacheris in the Eastern District has written that, in "Virginia, an operating division of a governmental entity cannot be sued unless the legislature has vested the operating division with the capacity to be sued." *Harrison v. Prince William Cty. Police Dep't*, 640 F. Supp. 2d 688, 711 (E.D. Va. 2009); *see Muniz v. Fairfax Cty. Police Dep't*, No. 1:05CV466 (JCC), 2005 WL 1838326, at *2 (E.D. Va. Aug. 2, 2005) (dismissing claims against municipal police department). The Virginia Code states that the "governing body of any county, city, or town may establish a fire department *as a department of government* and may designate it by any name consistent with the names of its other governmental units." Va. Code § 27-6.1 (emphasis added); *see* Va. Code § 27-14 (granting ordinance power to local governing bodies over fire departments established within their jurisdictions).

– 5 –

Plaintiff provides no citation to authority in response, instead casually stating that "there is no harm in naming both in the style of the pleadings" and requesting "the style remain the same until and unless there is evidence on the issue." (Dkt. 28 at 13). But Plaintiff is obliged to respond to Defendants' legal argument with legal authorities undergirded by facts in the Complaint, which she has not done. Thus, the Fire Department should be dismissed as a party.

**B.      Failure to Exhaust Administrative Remedies Regarding Portion of Age Discrimination Claim (Count IV)**

The City contends that the ageist statements by a third-party nurse on March 5, **2013** (*see* ¶¶ 99–104), which comprise most of Plaintiff's age discrimination claim in Count IV, cannot form the basis of that claim because they were "discrete act[s] of discrimination" that were not reported in her July **2015** EEOC charge. *See Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005) ("plaintiff fails to exhaust his administrative remedies where, as here, his administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit").[1] Although the 2015 EEOC charge included an age discrimination claim, the factual basis of it revolved solely around statements by co-workers (not non-City hospital employees) that dated back only to 2014 (not 2013). Accordingly, the age discrimination claim in Count IV cannot be based upon the 2013 nurse statements.[2] And as explained later, even when considering those comments on the merits, they and the additional

---

[1]      Defendants also write that Plaintiff "lacks standing" or otherwise may not raise claims of religious, racial, national origin, or sexual orientation discrimination. As noted at the outset, Plaintiff does not fall within these classes and the facts pertaining to them are irrelevant to her lawsuit.

[2]      Plaintiff asserts that Supreme Court precedent deems hostile work environment claims exhausted if they are timely filed from the occurrence of the last act comprising the environment, and that filing will relate back to "untimely" acts that also comprise it. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002); Pl's Br. at 2–3. But that is irrelevant because Count IV does not contain a hostile work environment claim based on age, and thus it does not implicate *Morgan*.

– 6 –

ones alleged do not support an age discrimination claim.

**C.      Hostile Work Environment Based on Sex (Count I)**

The City argues that Plaintiff does not allege facts sufficient to establish a sexually hostile work environment. It is mistaken.

Title VII makes it "an unlawful employment practice for any employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e–2(a)(1).  To establish a hostile work environment claim based on sex, the harassment must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. A plaintiff must show that the offending conduct: "(1) was unwelcome, (2) was because of her sex, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment, and (4) was imputable to her employer."  *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 331 (4th Cir. 2011).  The Complaint satisfies these elements.

1.      Unwelcomeness

One way courts determine if alleged harassment was unwelcome is to look to whether the Plaintiff complained to others.  *See Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 420 (4th Cir. 2014) (holding that reasonable jury could find that conduct was unwelcome when, among other evidence, plaintiff complained to others, including her human resources department, supervisor, and the harasser).  The City writes that the Complaint fails to allege Plaintiff told her co-workers or supervisors that the comments made her feel uncomfortable, or that the comments were otherwise unwelcome.  (Dkt. 27 at 13).

This argument misses the mark.  The Complaint alleges that Plaintiff complained several

times to her supervisors and others about the offending conduct. On August 14, 2014, when her co-workers "bragged about 'f*cking and scr*wing women' . . . Plaintiff reported the incident to Captain Darryl Hamlett, who dismissed the behavior as immature." (Dkt. 22 ¶ 21; *see id.* ¶ 28 (reporting further regarding incidents)). Furthermore, when a co-worker exposed his penis to Plaintiff in the locker room, "the behavior [also] was reported to Captain Darrell Hamlet." (*Id.* ¶¶ 45–46). In short, the Complaint is replete with allegations that Plaintiff did not welcome the treatment she received and made numerous efforts to see it corrected by reporting it to supervisors. (*See id.* ¶¶ 75–76, 79, 120, 121).

    2.    <u>Causation</u>

Next, a hostile work environment claimant must establish that the harassment occurred "because of her sex." *Hoyle*, 650 F.3d at 331. The inquiry is whether "'but for' the employee's gender, he or she would not have been the victim of discrimination." *Id.* (quoting *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 242 (4th Cir. 2000)). The City asserts that harassing conduct needs to be directed at the Plaintiff to meet this requirement. (Dkt. 27 at 12). It claims that, in the Complaint, "there are only three factual allegations of improper conduct actually directed at Plaintiff." (*Id.*).

Even if three allegations of targeted conduct were not enough, the Fourth Circuit has found that conduct need not be exclusively directed at the plaintiff to support a hostile work environment claim. *Hoyle*, 650 F.3d at 333. The inquiry focuses on the totality of the circumstances, *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993), which "includes conduct directed not at the plaintiff" and "evidence of a general atmosphere of hostility toward those of the plaintiff's gender." *Hoyle*, 650 F.3d at 333 (quoting *Jennings v. University of North Carolina*, 482 F.3d 686 (4th Cir. 2007)).

– 8 –

In *Hoyle*, the court found that placing photos of nude women or pictures of women in "sexually provocative dress and poses" in the common areas could satisfy the "because of sex" requirement. *Hoyle*, 650 F.3d at 331–32. Additionally, causation has been met when there was evidence that an employee frequently used the word "b****" in the office, discussed sexual encounters with women, frequently made "lewd" comments, and showed naked pictures of women to the plaintiff and others in the office. *Freeman*, 750 F.3d at 420.

In light of these authorities, the Complaint alleges sufficient facts to establish causation. Plaintiff alleges the widespread use of sexually degrading and gender-specific epithets in the workplace. Co-workers repeatedly bragged about "f*cking and scr*wing women," (dkt. 22 ¶ 21), while supervisors and co-workers referred to Plaintiff and other women as "b*tches and whores," "slut," and "stupid b*tch." (*Id.* ¶ 23–24). Additionally, Plaintiff alleges she was subjected to sexually graphic images of women by other employees during her employment. For instance, a captain showed Plaintiff a photo of a nude woman who appeared to be masturbating. (*Id.* ¶ 22). Co-workers displayed pornography on iPads during a training class. (*Id.* ¶ 48). At another training, a group of co-workers passed around a picture of a retired female firefighter from the office, and several co-workers made "lewd comments" about her breasts. (*Id.* ¶ 120). Finally, the Complaint alleges that a co-worker exposed himself to her in the locker room. (*Id.* ¶ 45). Considering the totality of the circumstances, these facts are sufficient to show causation.

3. <u>Severe or pervasive</u>

The third element of a sexual harassment hostile work environment claim is whether the conduct was "sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment." *Hoyle*, 650 F.3d at 331. The severe or pervasive element has both a subjective and objective component. *Harris*, 510 U.S. at 21–22. First, the

– 9 –

court considers whether the plaintiff subjectively perceived the environment to be severely or pervasively hostile. *Id.* Second, the court considers whether the conduct created an environment that a reasonable person would find hostile or abusive. *Id.*

The Court looks to "the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance[,] and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998). However, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminat[ion]." *Id.* at 788.

The facts recounted in the prior section demonstrate that Plaintiff endured severe and pervasive harassment.

First, Plaintiff alleges that she subjectively perceived the environment to be severely or pervasively hostile. When Plaintiff's co-workers used "b*tch, ho, and wh*re" to refer to women in the workplace, Plaintiff "advised her co-workers that the name calling was unacceptable." (Dkt. 22 ¶¶ 18–19). Additionally, Plaintiff "verbally supported the individuals who were being maligned" and reported the statements to her supervisors. (*Id.* ¶¶ 24–25). Plaintiff frequently reported harassing conduct to her supervisors and nothing was done. *See supra*. She also alleges that she spoke with the battalion chief about the poor treatment of women and minorities at the fire department. (*Id.* ¶ 75). Finally, the Complaint alleges that the hostile work environment resulted in Plaintiff's constructive discharge; she resigned from her job at the fire department "due to the incidents outlined in this Complaint." (*Id.* ¶ 74). From all of this, it is reasonable to infer that Plaintiff subjectively viewed the environment as severe or pervasive.

Second, Plaintiff alleges sufficient facts to provide a plausible claim that the environment was objectively severe or pervasive under the totality of the circumstances. Sexualized language

can be considered objectively severe or pervasive. In *Freeman*, the Fourth Circuit held that repeatedly using the word "bitch" and frequently making "lewd comments" in the office, along with discussions of sexual experiences with women and the display or naked pictures to others in the office, presented a triable issue as to whether sex-based harassment was objectively severe or pervasive. *Freeman*, 750 F.3d at 422; *see also EEOC v. Cent. Wholesalers, Inc.*, 573 F.3d 167 (4th Cir. 2009) (finding that reasonable juror could conclude harassment was objectively severe or pervasive when males in office frequently referred to women as "bitches," watched pornography at the office, and displayed pornographic screensavers on computers).

For roughly two years, Plaintiff was subjected to frequent sexualized statements. She does not assert merely one isolated incident or offensive utterance or teasing. Rather, she states that "supervisors and cadets *frequently* used the term b*tch, ho[,] and wh*re to describe women in the workplace." (*Id.* ¶ 18 (emphasis added)). A "male cadet *consistently* referred to Plaintiff and other women as b*tches and wh*res in the workplace." (*Id.* ¶ 17 (emphasis added)). And in addition to these allegations, the Complaint contains several specific incidents where co-workers used this type of sexualized language. (*See, e.g.*, *id.* ¶¶ 20, 21, 23, 24, 53, 60–61, 120).

What's more, Plaintiff encountered graphic sexual images and situations during the course of her employment. A co-worker exposed his penis to her. (*Id.* ¶ 45). A captain showed Plaintiff a photo of a nude, masturbating woman. (*Id.* ¶ 22). Male co-workers displayed pornography on their iPads during a training class. (*Id.* ¶ 120). Considering the totality of the circumstances, the conduct alleged here easily clears the severe or pervasive requirement.

4. <u>Employer-imputed responsibility</u>

In hostile work environment constructive discharge cases based on sexual harassment, employer liability is established if the employer created or condoned "working conditions so

– 11 –

intolerable that a reasonable person would have felt compelled to resign." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 131 (2004). In order to demonstrate constructive discharge, "a plaintiff must allege and prove two elements: (1) deliberateness of the employer's actions and (2) intolerability of the working conditions." *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1354 (4th Cir. 1995) (quotations omitted). To prove deliberateness, a plaintiff must establish that "the actions complained of were intended by the employer as an effort to force the employee to quit." *Id.* Employer intent can be proved by inference. *Id.* Evidence of employer intent includes whether "the employer failed to act in the face of known intolerable conditions," or that the "employee's resignation was the reasonably foreseeable consequence of the employer's conduct." *Id.*; *Amirmokri v. Baltimore Gas & Elec. Co.*, 60 F.3d 1126, 1133 (4th Cir. 1995).

The Complaint alleges sufficient facts to show that liability is imputable to the employer. First, the facts here evince deliberateness. The Complaint states several times that the employer failed to do anything in response to Plaintiff's complaints of harassment. For example, her complaints about discriminatory actions "were dismissed . . . by her supervisors and co-workers." (Dkt. 22 ¶ 27). After Plaintiff was subjected to pornography on the iPads of several male employees, the battalion chief casually told Plaintiff that "the department was not responsible for monitoring [the iPads'] content." (*Id.* ¶ 47).

Furthermore, when Plaintiff complained that co-workers were referring to women in pejorative terms and that several co-workers bragged about "f*cking and scr*wing women," her captain "dismissed the behavior as immature." (*Id.* ¶ 21). Plaintiff reported other lewd remarks to a captain, who "told her that she could make a formal complaint, but she would be retaliated against . . . [and] by reporting it, she would be subjected to further harassment and retaliation." (*Id.* ¶ 120). Finally, "[s]upervisors, and individuals in authority, while acting as agents for the

– 12 –

[f]ire [d]epartment and [c]ity failed to correct, participated in[,] and promoted the hostile work environment that caused Plaintiff's constructive discharge." (*Id.* ¶ 123).

Accordingly, Plaintiff provides sufficient facts to plausibly show that the employer failed to act in the face of known intolerable conditions, and that Plaintiff's resignation was a reasonably foreseeable consequence of that failure to respond.

Because the Complaint alleges sufficient facts to state a plausible claim for hostile work environment based on sexual harassment, Count I will not be dismissed.

### D.   Age Discrimination (Count IV)

An employer may not "discharge any individual or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). Under the ADEA, a plaintiff must demonstrate: (1) she was a member of the protected class—that is, older than 40; (2) she was discharged; (3) she was qualified for the job and met the employer's legitimate expectations; and (4) the position remained open or was filled by a similarly qualified individual who was substantially younger. *Hill v. Se. Freight Lines, Inc.*, 523 F. App'x 213, 215 (4th Cir. 2013).

The Complaint is devoid of any non-conclusory allegations regarding the fourth element. The City also correctly observes that, as to the alleged discrimination itself, Plaintiff relies only on two "ageist" comments over the course of two years, and there is no connection between those comments and adverse employment action. Finally, Plaintiff makes several allegations about comments a nurse made to her (which the Court has already determined were not administratively exhausted), but that nurse was not employed by the City but rather by a hospital.

In any event, Plaintiff—by not responding in her brief to any of the City's arguments on this score—has conceded that this claim should be dismissed.

– 13 –

### E.     Retaliation (Counts II, III, and V)

"To establish a prima facie case of retaliation in contravention of Title VII, a plaintiff must prove (1) that she engaged in a protected activity, as well as (2) that her employer took an adverse employment action against her, and (3) that there was a causal link between the two events." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) (en banc) (internal quotations omitted).

#### 1.     Retaliation based on "assault" (Count II)

Plaintiff's brief observes that she "has not filed an independent cause of action for assault," but instead her "factual allegations of assault are in support of the retaliation and hostile work environment claims." (Dkt. 28 at 15). The City replies that the assault-based allegations are unrelated to retaliation.

Under a section entitled "Assault" within Count I, Plaintiff alleges that she was "physically assaulted during" a September 2013 training, but that she could not identify who committed the assault. Her superiors took no action because they could not ascertain whom to punish, and urged Plaintiff to move past the incident. (*See generally* Complaint ¶¶ 66–69).

The retaliation charge filed by Plaintiff (in July 2016) listed only her original charge of discrimination (in July 2015, for sex and age discrimination) as the protected activity against which the City retaliated. Accordingly, there is no administrative exhaustion as to allegedly retaliatory acts that predated the filing of Plaintiff's original charge in July 2015. Even on the merits, because the September 2013 assault itself appears unconnected to any protected activity of Plaintiff, and because there was no apparent adverse employment action taken against her on account of reporting the incident, it cannot form the basis of a Title VII retaliation claim.

As to the assault-related allegations within Count II itself, Plaintiff baldly asserts that

"[a]s a direct result of her complaints to the fire department supervisors, Plaintiff was assaulted during the tests," was "excluded" from "department activities" and "certain houses," and received failing grades. (Complaint ¶¶ 81–84). That is the full extent of those events' explanation: No further details about them are provided, *e.g.*, who allegedly perpetrated them and when they allegedly occurred. These allegations do not satisfy the *Twombly/Iqbal* standard. Moreover, since such acts occurred when Plaintiff was still employed by the City as late as July 2015, they are not properly exhausted, having been no part of Plaintiff's retaliation charge filed in July 2016.

For all of these reasons, Count II will be dismissed.

2. <u>Retaliation based on "poor job reference" (Count III)</u>

As mentioned above, Plaintiff first filed a charge of sex and age discrimination in July 2015, then a retaliation charge in July 2016 based on a poor job reference she allegedly received after filing the original charge. (*See* Complaint ¶¶ 85–86; dkts. 27-1 & 27-2). With little detail, she alleges that subsequent to the first charge, Defendant "made disparaging comments, reviews or statements about Plaintiff to potential employers." (*Id*. ¶ 87). She alleges the City is "disparaging" her to would-be employers on account of her first charge. (*Id*. ¶ 88).

Notably, the Complaint is silent as to when these retaliatory remarks took place, making it difficult to draw any inference of causation (which otherwise is absent) based on temporal proximity. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). But, the charge of retaliation discrimination states they occurred on May 25, 2016.[3] This more-than-ten-month gap between the protected activity and the allegedly retaliatory act is too long to infer causation.

---

[3] The charges of discrimination are judicially noticeable because they are integral to the Complaint and authentic. *Darveau v. Detecon, Inc.*, 515 F.3d 334, 344 n.2 (4th Cir. 2008); *Davis v. Navy Fed. Credit Union*, No. 1:11-CV-01282, 2012 WL 73233, at *3 (E.D. Va. Jan. 10, 2012) (compiling cases).

– 15 –

*Hooven-Lewis v. Caldera*, 249 F.3d 259, 278 (4th Cir. 2001) ("A six month lag is sufficient to negate any inference of causation."); *Hall v. Greystar Mgmt. Servs., L.P.*, 637 F. App'x 93, 99 (4th Cir. 2016) (finding ten-month gap "suggests—by itself—no causality at all"); *Perry v. Kappos*, 489 F. App'x 637, 643 (4th Cir. 2012) (compiling Fourth Circuit cases holding that gaps of four months, three months, and even ten weeks are insufficient to provide inference of causation). Count III, then, must be dismissed.

### 3. "Whistle Blower Retaliation" (Count V)

The City contends there is no such thing as a "whistleblower retaliation" cause of action, and Plaintiff has not pled one even if there was. (Dkt. 27 at 19–20). Plaintiff did not respond to this argument, so she has conceded the issue. (Dkt. 29 at 10).

### F. Vicarious Liability (Count VI)

Plaintiff alleges a stand-alone claims for "vicarious liability" based on her supervisors' sundry failures to remedy discrimination. Because this claim is either duplicative of her Title VII claim or not viable under Virginia law, it should be dismissed.

It is true that an employer can be vicariously liable for employee acts under Title VII. But such liability is simply a function of standard discrimination claims like those already alleged, *e.g.*, hostile work environment and retaliation. *See Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 278 (4th Cir. 2015) ("The status of the harasser also is relevant to element four of a hostile work environment claim, which necessitates proof that the harassment is imputable to the employer."); *Brown v. Perry*, 184 F.3d 388, 394–95 (4th Cir. 1999). That is, the other counts do the work, and if they are proven, then the employer is liable. The notion of "vicarious liability" as a freestanding count adds nothing substantive to the Complaint. Moreover, as the City observes, "[v]arious courts in Virginia have held that vicarious liability is

– 16 –

not a separate cause of action in Virginia, but rather, a theory of liability." *Ali v. Coleman*, No. 1:12-CV-560, 2013 WL 4040444, at *2 (E.D. Va. Aug. 6, 2013).

Plaintiff contests neither of these points, and therefore this claim will be dismissed.

### G. Negligence and Defamation (Count VII)

Although labeled as both "negligence" and "defamation," the allegations in this count sound in defamation. Unfortunately, Count VII contains no more than a formulaic recitation of the elements forbidden by *Twombly*/*Iqbal*. Plaintiff alleges that on May 25, 2016, Captain Darrel Hamlett "provided a third party a negative written job reference" even though he had provided positive references in prior years. (Complaint ¶¶ 127–32). However, the Complaint is devoid of the content of these allegedly defamatory statements, aside from circular, conclusory references to "said factual assertions" and "said written statements" harming Plaintiff, and "said performance evaluation" being false. (*E.g.*, *id*. ¶¶ 133–35, 140–41). The City claims immunity from this count, but also that it fails on the merits because defamation under Virginia law requires proof of the exact defamatory words. *See Fuste v. Riverside Healthcare Ass'n, Inc.*, 265 Va. 127, 134 (Va. 2003); *Goulmamine v. CVS Pharmacy, Inc.*, 138 F. Supp. 3d 652, 669–70 (E.D. Va. 2015). Count VII does not meet this standard and thus will be dismissed.

### SUMMARY

Defendant Lynchburg Fire Department will be dismissed from this case, as will Counts II through VII. Count I remains pending against Defendant City of Lynchburg. The Clerk of Court is requested to send a copy of this Opinion and the accompanying Order to the parties.

Entered this __5th__ day of June, 2017.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE